CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 4 2009

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRED LEWIS WILSON, | ) |
| Plaintiff, | ) Case No. 7:09CV00325 |
| v. | ) MEMORANDUM OPINION |
| A. COLEMAN, ET AL., | ) By: Glen E. Conrad |
| Defendants. | ) United States District Judge |

Plaintiff Fred Lewis Wilson, a Virginia inmate proceeding pro se, brings this action as a civil rights complaint, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Wilson alleges that the defendant prison officials at Red Onion State Prison have deprived him of adequate, timely dental treatment for gum disease and problems related to deteriorated fillings, have forced him to live in hazardous cell conditions, and have failed to provide him with access to dental cleanings, dental floss, and fluoride toothpaste as preventative measures. Upon review of the record, the court finds that the complaint must be dismissed.

## Background

Wilson's submissions present the following sequence of events from which his claims arise.[1] In December 2007 and January 2008, Wilson reported to prison officials in an inmate request form that he had dental fillings which needed to be replaced and that he needed to have his teeth cleaned.[2] Staff responses indicated that he was on the list to see the dentist and the

---

[1] Wilson's complaint makes only a conclusory statement of Claims 1 through 4 and does not describe the facts on which they are based. Accordingly, in setting forth this background summary of events, the court relies on information from the exhibits Wilson attached to the complaint and from his amendments.

[2] Red Onion procedures require that inmates who need to be seen by a doctor or dentist must file an inmate request form, asking for this service, and the request will be screened by a nurse. (Compl. Ex. 44(3).) Such requests for dental care are "scheduled on a priority basis." (Id.) Emergency grievances are reserved for "conditions that could subject the offender to an immediate risk of serious personal injury or irreparable harm." (Compl. Ex. 44(2).) "It is the duty of all correctional employees to be responsive to grievances of an emergency nature." (Compl. Ex. 45(10).)

hygienist, but that the dental unit scheduled requested, non-emergency dental visits in the order received and the hygienist was then working through requests filed in May 2008. Wilson renewed his dental complaints in November and December 28, 2008, noting that the sensitivity of his molars was making it difficult to eat and his gums were bleeding from possible gum disease. Staff responses advised that he was on the dental list. In March and April 2009, Wilson complained that his gums were swollen and bleeding, he was "spitting large amounts of blood," he was unable to eat hot or cold food, and his teeth were aching so badly that he could not sleep; he termed the situation a "medical emergency." The staff response said that he was "already on the list" or would "be seen shortly."

On the morning of April 20, 2009, Wilson estimated that he had spit up "almost a QT. of blood [and] was very sick and could hardly stand. The sink in [his] cell was stopped up from blood and [Wilson] was barely conscious." (Compl. Ex. 33, p. 1.) An officer came to take Wilson to court. On the way, he was "spitting up blood badly" and people in the courtroom noticed blood on his shirt. (Id.) At 1:18 p.m., after he returned to his cell, Wilson handed in an emergency grievance (#035938), which stated:

> Please help me my mouth and gums are bleeding badly. I need someone to call dental dept! I estimate I've lost a quart of blood already. I have become so weak I can no longer stand over the sink and spit up blood! Also the blood has co[agulated] and stopped the sink up! I have showed this to C/O Tulip [and other officers] and they sprayed a couple squirts of cleaner/ but the blood is on wall, door, floor and my bedding. I need proper cleaning. This is unsanitary. Cell C210 is open? And mostly I need someone to call the Dental dept!

(Compl. Ex. 16.) Officer Tulip receipted the emergency grievance, but then failed to process it properly or to notify anyone in the dental unit immediately of Wilson's complaints. At 7:50 p.m. that same day, Wilson filed a second emergency grievance (#035939) about the situation. Lt. D. Fleming responded that it was not an emergency and advised Wilson, "Use proper procedure." Fleming did not forward the emergency grievance to the dental unit. Wilson lay in his cell and "suffered and ble[d] and could have died[; he] felt like [he] was dying." (Compl. Ex. 33, p. 1.)

On April 21, 2009, Nurse Kilgore saw Wilson and referred him to the medical unit, advising him that he should immediately report any bleeding to staff. When he filed an emergency grievance (#035940) complaining about his bleeding and his bloody cell, Nurse Kilgore responded that he had been seen and referred for dental treatment, so his situation was not an emergency. (Compl. Ex. 18.)

On April 22, 2009, Wilson turned in his bloody sheets, but Officer Gumm denied Wilson cleaning supplies, clean bedding or clothing, and an emergency grievance form, and refused to bring the nurse to see him again, leaving Wilson to sleep without bedding. The next day, Wilson's mouth started bleeding badly again. He asked Officer Ring for his clean laundry. Ring tossed the clean bedding on the pod floor, where several other officers trampled on it all day. These officers denied Wilson cleaning supplies and clean bedding. Wilson filed an emergency grievance (#035946) seeking medical or dental attention because of the vomiting and bleeding. Officer Triplett signed a receipt and "simply discarded [this] emergency grievance." Wilson believes officers took steps to cover up the fact that no one acted on his two emergency grievances on April 20-21, 2009. In a memo dated May 22, 2009, Cpt. McCoy informed Wilson that according to his investigation, emergency grievances #035938 and #035946 were receipted, but "lost in transit" and the officers did not remember what happened to them. (Compl. Ex. 43.)

Dr. Collins, a dentist, examined Wilson on April 30, 2009. The dentist's chart notes indicate that he found "moderate treatment necessary." (Compl. Ex. 19.) On May 11, 2009, Wilson complained to Dr. Collins that the antibiotics were not addressing the infection in his mouth, as he still had swelling, pain, bleeding, and sensitivity to hot or cold foods. On May 15, 2009, the staff response advised Wilson, "Keep brushing w[ith] salt at the gum line 3 times a day. The meds will work. You need to practice better oral hygiene. Make sure you brush at the gum line & behind your teeth." (Compl. Ex. 11.) In emergency grievances and inmate request forms later in May, Wilson continued to complain about his pain. Staff provided pain

medication, which Wilson claimed was ineffective to address his pain or bleeding. On June 2, 2009, Dr. Collins responded that Wilson was scheduled for reevaluation of his dental problems.

According to Wilson's allegations in amended Claim 5 (Dkt. No. 8), Dr. Collins examined Wilson again on August 4, 2009. The dentist informed Wilson that the bleeding was coming from between certain of his molars, that he needed to floss between his teeth, or the bleeding and pain would get worse from gum disease and Wilson would lose his teeth. Wilson asserts that segregation inmates at Red Onion, including himself, are not allowed to possess dental floss, although they are allowed other personal property items that present far greater potential threats to security. He also complains that inmates are provided with toothpaste that does not contain enough fluoride to protect their dental health. He complains that Dr. Collins refused to write a prescription allowing Wilson to floss his teeth daily under supervision or requiring that he be provided with "toothpaste that can stop and reverse [his] pain and suffering, but only [told Wilson] to consider extraction." Dr. Collins also refused to repair Wilson's deteriorated fillings.

In his amended Claim 6 (Dkt. No. 13), Wilson alleges a separate, but related claim against Lt. Travis McCoy, based on the following sequence of events. On April 20, 2009, when the bleeding from Wilson's mouth infection was very severe, McCoy forced him to wear a "dirty months old mask" over his face and head during transport to a court proceeding.[3] The mask became soiled with blood from Wilson's moustache and from his continued coughing of blood. From that day until June 22, 2009, McCoy forced Wilson to wear this bloodied mask over his face every time officers removed Wilson from his cell. Wilson asserts that in retaliation for Wilson's filing complaints about his bloody cell, McCoy refused to replace the unsanitary mask, even though it presented a health risk, and introduced a nickname for Wilson when he was wearing the mask: "niggerhead."

---

[3] From submissions about the mask in Wilson's other civil action pending in this court, Case No. 7:08CV00638, it appears that officials required Wilson to wear the mask because on at least one past occasion, officers reported that he spat at them.

In his initial § 1983 complaint concerning these events and allegations, Wilson raised four claims. The court conditionally filed Wilson's complaint until he complied with financial requirements and consented to payment of the filing fee through installments, pursuant to § 1915(b). Wilson has also filed three motions to amend (Dkt. Nos. 8, 13, and 16) in which he raises four additional claims. The court will grant these amendments. In the complaint as amended, Wilson alleges the following claims for relief under § 1983:

1. For months (mid-2007 through December 2008), Dental Assistant A. Coleman received plaintiff's sick call requests seeking dental treatment and cleaning without scheduling him for an appointment to see the dentist, causing plaintiff to suffer for the next five months with a mouth infection.

2. On April 20, 2009 at 1:18 p.m., after receipting plaintiff's emergency grievance (#035938) asking someone to call the dental department because his mouth was bleeding extensively, Officer Tulip failed to ensure that someone responded to the emergency.

3. On April 20, 2009 at 7:50 p.m., after receiving plaintiff's emergency grievance asking for help because he had thrown up blood and his cell was unsanitary, Officer D. Fleming responded that it was not an emergency and told him to "use proper procedures."

4. On April 23, 2009 at 8:56 a.m., after receipting plaintiff's emergency grievance (#035946) asking someone to call the dental department because his mouth was bleeding extensively and he had no clean sheets or clothing, Officer Triplett failed to ensure that someone responded to the emergency.

5. Warden Tracy Ray's policies that prevent segregation inmates at Red Onion from receiving regular dental cleanings, dental floss, and strong fluoride toothpaste constitutes deliberate indifference to Wilson's serious dental problems.[4]

---

[4] Amended Claim 5 also raises another claim concerning the dental treatment that Wilson received on August 4, 2009 from the dentist, Dr. Collins. Wilson alleges that Collins refused to repair his deteriorated fillings, advised him that he should consider extraction of the teeth affected by gum disease, and failed to provide him with access to dental floss, strong fluoride toothpaste, and regular dental cleanings so that he could keep his teeth. Wilson admits, however, that he did not have time to

6. From April 20 to June 22, 2009, Lt. McCoy forced plaintiff to wear an unsanitary, bloody mask over his face and head every time he left his cell and called him "niggerhead," in retaliation because plaintiff had utilized the administrative remedies procedure to complain about officials' failure to process his emergency grievances on April 20 and 23, 2009.

7. On April 22, 2009, Officer Gumm denied plaintiff cleaning supplies, clean laundry, and an emergency grievance form to request sick call, although Gumm knew plaintiff was sick, had been spitting up large amounts of blood, and had no clean clothing or bedding.

8. On April 23, 2009, Officer Ring tossed plaintiff's clean laundry on the pod floor where it was dirtied by other officers walking on it.

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." In reviewing the case for possible summary dismissal, the court must accept allegations in the complaint as true and draw all reasonable factual inferences in the plaintiff's favor. See De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). Plaintiff's factual allegations must

---

exhaust his administrative remedies as to this claim against Dr. Collins before filing the amendment. Accordingly, this claim must be dismissed without prejudice, pursuant to 42 U.S.C. § 1997e(a), which requires exhaustion of available administrative remedies before an inmate may bring a civil rights claim. See also Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005) (finding that the court may raise the issue of exhaustion on its own motion and "in the rare case where failure to exhaust is apparent from the face of the complaint," may summarily dismiss a complaint on that ground).
  In any event, this claim has no merit, as Wilson merely disagrees with the dentist's assessment of appropriate treatment options for his dental conditions. Such a disagreement states, at most, a claim of medical negligence, which is not sufficient to state a constitutional claim regarding prisoner medical care and so is not actionable under § 1983. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

contain "more than labels and conclusions" and "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## A. Dental Treatment

To prove that his course of medical treatment amounted to an Eighth Amendment violation, an inmate must show that prison officials to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

> A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention or if denial of or a delay in treatment causes, or threatens to cause, the inmate to suffer a life-long handicap or permanent loss.

Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (internal quotations omitted).

To prove deliberate indifference, the inmate must show that the official was aware of objective evidence from which he could draw an inference that a substantial risk of harm existed and that he drew that inference. Farmer v. Brennan, 511 U.S. 825, 847 (1994). On the other hand, negligent misdiagnosis or other instances of medical malpractice do not present constitutional deprivations. Estelle, 429 U.S. at 105-106. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106. See also Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (because evidence indicated doctors diagnosed and treated plaintiff's symptoms, but did not show that doctors knew his condition involved pituitary gland tumor, failure to diagnose and treat that condition did not state Eighth Amendment claim even though inmate ultimately went blind). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Delay in dental treatment for a known condition that presents a serious risk can become a constitutional violation, depending on the circumstances. See, e.g., Boyd v. Knox, 47 F.3d 966, 969 (8th Cir.1995) (finding that 3-week delay in completing paperwork for inmate to

have surgery on badly infected wisdom tooth was genuine issue of material fact as to deliberate indifference). Patterson v. Pearson, 19 F.3d 439, 440 (8th Cir.1994) (finding that dentist's nearly 3-week delay in examining inmate's tooth after being notified of inmate's excruciating pain could support deliberate indifference claim).

The United States Court of Appeals for the Fourth Circuit has held that a medical treatment claim cannot succeed against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.

Taking Wilson's submissions in the light most favorable to him, the court concludes that his § 1983 claims regarding delayed dental treatment must be dismissed. He alleges that by late 2008 and early 2009, particularly on April 20, 2009, his deteriorated fillings and bleeding gums presented a dental emergency that should have been treated sooner. Wilson's own submissions, however, indicate that on April 21, 2009, a nurse examined him and determined that his problems should continue to be referred to the dental department. This nurse, who is not named as a defendant in the action, did not find that Wilson's conditions presented a medical emergency that required immediate dental treatment.[5] Her finding is consistent with Wilson's allegations about his overall condition. Although Wilson states his belief that he had lost significant amounts of blood on April 20, 2009, to the point of feeling weak and sick to his stomach that day, he does not allege continued adverse effects from loss of blood. He was able to go to court that morning, despite the bleeding. Moreover, when the dentist examined Wilson on April 30, 2009, he found that only moderate treatment was warranted, including a prescription antibiotic. In short, Wilson's own allegations indicate that while his toothache and bleeding gums were no

---

[5] Although Wilson alleges that Nurse Kendrick examined him on April 21, 2009, and told him to alert staff when he was bleeding, he does not allege that she found it necessary to provide any medical treatment related to his bleeding gums, his loss of blood, or his nausea.

- 8 -

doubt troublesome and uncomfortable for him, in the opinion of a medical professional on April 21, 2009, they did not present a serious risk of harm requiring immediate dental treatment or more than minimal medical treatment.

Wilson does allege that his teeth ached and that swallowing blood from his gums caused him to vomit at times. However, he does not allege facts indicating that before his dental appointment on April 30, 2009, he asked prison staff for treatment to relieve these specific symptoms, such as pain medication or anti-nausea medication. The only form of treatment he alleges requesting related to his teeth from 2007 through April 2009 was dental treatment to correct the conditions causing these symptoms: the problem fillings and gums. Because the dental assistant who received his inmate request forms during this period and the medical professionals who evaluated his condition in April 2009 did not find his complaints to present a need for immediate dental attention for these conditions, he cannot show that any of the defendants acted with deliberate indifference to a serious medical need for emergency dental treatment when they failed to ensure that he saw the dentist sooner than he did. For this reason, to the extent that Claims 1, 2, and 3 allege unconstitutional delay of dental treatment, they must be dismissed, pursuant to § 1915A(b)(1), for failure to state a claim.

For a similar reason, Wilson's Claim 5 against Warden Ray must be dismissed under § 1915A(b)(1). Warden Ray is not a dental professional. He is entitled to rely on recommendations from medical professionals regarding the necessary medical treatment for Wilson's dental problems. Miltier, 896 F.2d at 854. Wilson admits that the dentist did not write a prescription for dental floss, stronger fluoride toothpaste, or more frequent dental cleanings as necessary treatment in Wilson's case. Policies at Red Onion allow segregation inmates to possess toothbrushes and fluoride toothpaste. They also receive dental cleanings and evaluation of other dental care needs, although they may wait several months for such non-emergency dental attention. As indicated in Wilson's submissions, inmates like Wilson with problem gums may brush their teeth with salt water. (Compl. Ex. 11.) Based on these facts, Wilson cannot prove

that the warden's failure to allow segregation inmates the additional dental care items he requests represents deliberate indifference to a serious medical need.

In short, based on plaintiff's own submissions, it is undisputed that the dentist assigned to evaluate plaintiff's condition did not deem plaintiff's dental problems to be so severe as to warrant the emergency measures which Wilson believes the non-medical defendants should have provided. Consequently, the court concludes as a matter of law that plaintiff has failed to forecast evidence that would establish the existence of a serious medical need or that any of the defendants could have reasonably inferred the existence of a substantial risk of harm. It follows that plaintiff's dental claim fails to state a viable cause of action. Farmer, 511 U.S. at 847.

### B. Hazardous Living Conditions

The Eighth Amendment also protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that (1) the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious," and (2) that, subjectively, the defendant prison officials acted with deliberate indifference to the risk. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm. Helling v. McKinney, 509 U.S. 25, 31 (1993); Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

Several of Wilson's claims allege that various officials acted with deliberate indifference to the health hazards posed by the blood from his "mouth infection." Wilson does not, however, allege facts indicating that he suffered any significant injury, mental or physical, as a result of

having a dirty cell and clothes or as a result of wearing the bloodied spit mask.[6] Absent a showing of injury, his Eighth Amendment claims regarding all of these allegedly hazardous conditions fail and must be dismissed, pursuant to § 1915A(b)(1).

### C. Pending Motions

Wilson has a pending motion asking for "immediate dental treatment." He seeks a court order directing that he be transferred away from Red Onion and that prison officials provide him with dental cleanings, dental floss, and "a strong and approved fluoride toothpaste." In support of this motion, he restates his allegations about his bleeding gums and the delay in getting to see the dentist. The court finds that the motion must be denied.

A district court should issue preliminary injunctive relief only sparingly, using the "balance of hardship" test. In applying this test, the court should consider four factors: 1) whether the plaintiff will suffer immediate and irreparable harm if the relief is not granted; 2) the likelihood of harm to the defendants if relief is granted; 3) the likelihood that plaintiff will eventually succeed on the merits; and 4) whether the public interest lies with granting the relief. Wetzel v. Edwards, 635 F.2d 283, 291 (4th Cir. 1980) (citing Blackwelder Furniture Co. of

---

[6] Wilson alleges that Lt. McCoy forced him to wear the dirty mask as "reprisal" because Wilson refused to withdraw informal complaints related to the lost grievances that are the subject of Claims 2 and 4. He also alleges that officials conspired to cover up the fact that these emergency grievances, filed on April 20 and 23, 2007, were never properly processed. These allegations do not state any claims actionable under § 1983. Inmates have no constitutional right to a prison grievance procedure, and as such, officials' failure to follow established procedures regarding handling or answering of a grievance does not state any separate constitutional claim. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Moreover, as Wilson was not exercising a constitutional right when he utilized the prison's grievance procedures, any adverse actions taken against him related to his grievances do not give rise to any constitutional claim of retaliation actionable under § 1983. See American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (finding that to state § 1983 claim of retaliation, plaintiff must allege facts showing that his exercise of his constitutional right was a substantial factor motivating retaliatory action) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977). While calling an inmate a racial slur is highly unprofessional, if it happened, allegations about prison officers verbally abusing inmates in such a manner are not sufficient to state any independent constitutional claim actionable under § 1983. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Id.; Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Keyes v. City of Albany, 594 F. Supp. 1147 (N. D. N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a §1983 claim.").

Statesville, Inc. v. Seilig Manufacturing, Co., 550 F.2d 189, 195 (4th Cir. 1977)). However, the functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994).

The court has already found that Wilson's allegations are insufficient to state a constitutional claim that prison officials have acted with deliberate indifference to any serious or immediate need for the requested dental items and service. As he thus cannot demonstrate any likelihood of success on the merits of his underlying claim, the court must deny his request for interlocutory injunctive relief.

Finally, Wilson also requests an order directing that the bloody spit mask be produced to the court to preserve it as evidence. As his complaint fails to state any constitutional claims related to the mask, his motion for production will be denied.

## Conclusion

For the stated reasons, plaintiff's motions to amend will be granted, but the court concludes that the amended complaint fails to state any actionable claim under § 1983 and must, therefore, be dismissed, pursuant to § 1915A(b)(1). An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 24th day of September, 2009.

_____
United States District Judge